(58 App. Div. 76.)

BIRNBAUM v. MAY et al.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. BROKERS—ORDERS TO BUY.

No obligation of defendant brokers to buy stock for plaintiff is shown, he having testified that he directed them by a letter, which he mailed October 21st, 22d, or 23d, to purchase stock at the opening of the market on October 23d, which testimony does not prove that the letter was mailed in time to be received at the opening of the market, and one of the defendants and the office assistant having testified that no such letter was received.

2. SAME—RIGHT TO BENEFIT OF SALE.

Plaintiff having repudiated a sale "short" of stock made by defendant brokers for him, because it was made at 104 instead of 108, and insisted that if they did not disaffirm it he would hold them for damages, and having told one of them to buy it in and he would hold them for the difference, and they having bought it in at 107¾, and sent him a check for the amount of his deposit, less commissions and the loss from the sale at 104 and the purchase at 107¾, he cannot thereafter claim the benefit of the sale, the stock having gone down.

Appeal from trial term, New York county.

Action by Jacob Birnbaum against Lewis A. May and others. From a judgment after trial entered on a decision for plaintiff, and

from an order denying motion for new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, RUMSEY, PATTERSON, and O'BRIEN, JJ.

J. Quintus Cohen, for appellants.
J. M. Birnbaum, for respondent.

McLAUGHLIN, J. The defendants are stockbrokers, and this action was brought to recover $71.05 deposited with them by the plaintiff as a margin for the purchase or sale of stocks, and also to recover $192.50 damages alleged to have been sustained by reason of defendants' failure to purchase certain stock as directed. The complaint alleged, in substance, that the plaintiff deposited with the defendants $71.05 as a margin to be used in the purchase or sale of stocks, and that on the 15th of May, 1899, after such deposit had been made, the plaintiff ordered the defendants to make a "short" sale of 10 shares of Brooklyn Rapid-Transit stock, and that in pursuance of such order the defendants did, on that day, sell for the plaintiff 10 shares of such stock at 104; that on the 23d of October of the same year the plaintiff ordered the defendants to buy 10 shares of the same stock, at the opening of the market on that day, at the market price (which was 83¾) to cover the 10 shares theretofore sold "short"; that the defendants failed and neglected to buy the stock thus ordered, and by reason thereof damages were sustained by the plaintiff to the amount of $192.50, for which sum and the amount deposited judgment was demanded. The answer admitted the deposit and the sale of the stock as alleged, and denied substantially all of the other material allegations of the complaint.

The trial court found that the deposit and sale were made as alleged in the complaint, and that on the 23d of October, 1899, the plaintiff ordered the defendants to buy 10 shares of the stock theretofore sold "short," at the opening of the market on that day, at the market price (which was 84⅞); that the defendants failed and neglected to buy the stock as directed, and by reason thereof the plaintiff sustained damages to the amount of $191.25. Judgment was thereafter entered in accordance with the finding, from which the defendants have appealed. Upon the trial there was no dispute between the parties as to the deposit made by the plaintiff or the sale at 104. The fact, however, which was disputed, was whether an order was given on the 23d of October to purchase the number of shares of stock theretofore sold, and, if it were, if there were then any obligation on the part of the defendants to obey the order.

As bearing upon these issues, the plaintiff, in his own behalf, testified that after the sale at 104 he gave the defendants no further order until about the 23d of October, when he ordered them to purchase, at the opening of the market on that day, at the market price, 10 shares of the same stock theretofore sold "short" for him; that the order was in writing, which he mailed to the defendants, prepaying the postage thereon, and depositing the same in the general post office in the city of New York, "on or about October 21st or

October 22d or October 23d"; that the defendants failed and neglected to make the purchase as directed; that the price of the stock in question, at the opening of the market on the 23d of October, was 84⅞ (and as to the price he was corroborated by the secretary of the stock exchange); and that they had also neglected to return the deposit made by him, notwithstanding a demand therefor. This constituted substantially all of the testimony offered on the part of the plaintiff.

On the part of the defendants, one of them, Lewis A. May, testified that immediately following the sale of the 10 shares of stock "short" the plaintiff was informed of that fact; that he was dissatisfied with the sale, and claimed that it should have been made at 108 instead of 104; that the person who made the sale on the floor of the exchange was sent for, but was unable to satisfactorily explain the sale to the plaintiff, who still insisted that it should have been made at 108, and that the defendants were responsible for the difference between that and the price at which the sale was actually made, and that he then said, "Well, buy it in, and I will hold you for it;" that, unless the defendants made good to him this difference, he would place the matter in the hands of his attorney; that the defendants thereupon purchased 10 shares of the same stock at 107¾ (the market price at the time), and that this purchase was made on the same day, and within a few minutes of the time when the sale had been made at 104. This witness was corroborated in some respects by a letter (which was introduced in evidence) from the plaintiff to the defendants, dated the same day the sale was made. It also appeared that the plaintiff did place the matter in the hands of an attorney, and that the defendants, within a few days of the transaction, received a letter from the attorney, asking for a statement of plaintiff's account, in response to which the defendants forwarded to the attorney a check bearing date the 18th of May, 1899, payable to the order of the plaintiff, for $33.15, the amount of the deposit, less commissions on transactions, and the loss which the defendants claimed the plaintiff had sustained; that is, the difference between the sale of the stock at 104 and the purchase at 107¾. The check was subsequently returned to the defendants, and by them held until the 30th of October, 1899, when the plaintiff wrote them, asking for a settlement of the account, and on the day following he was informed that they had previously sent a check to his attorney, which had been returned, and they would deliver it to him if he would call at their office. As to the order of October 23d, this witness testified, and he was corroborated by at least one other witness, that it was never received by the defendants.

The foregoing is substantially all of the testimony offered bearing upon the facts in issue, and from it we are unable to see how the trial court reached the conclusion which it did. There is no evidence to sustain the finding "that on the 23d of October, 1899, the plaintiff ordered and directed defendants to buy for him ten shares of Brooklyn Rapid-Transit stock, at the opening of the market on that day, at the market price, which was to cover 'short' sale aforesaid." The plaintiff, it is true, testified that he directed the defend-

68 N.Y.S.—38

ants to make such purchase, in a letter which he mailed "on October 21st or October 22d or October 23d." At what time this letter was mailed does not appear, and, if it were mailed on the 23d, how can it be said, in the absence of proof that it was received prior to the opening of the market, that the defendants were obligated to make the purchase directed? Unless the defendants received this order, there was, of course, no legal obligation resting upon them to fill it, and, before they could be held liable for not filling it, the plaintiff was bound to establish, not only the mailing of the letter, but that it was mailed at such a time that it would, in due course, have reached the defendants prior to, or at least at the opening of, the market. No such proof was offered, and, in addition to this, we have the positive testimony of one of the defendants and the office assistant to the effect that no such letter was received. The finding, therefore, is unsupported by the evidence. But, if the order had been received prior to the opening of the market on the 23d of October, the defendants were under no legal obligation to make the purchase. The transactions between the parties on the previous 15th of May were such that their relations were then terminated. The fact that he was dissatisfied with the sale at 104 is not disputed, nor is it disputed that when informed of the sale he repudiated it, and insisted that, if the defendants did not disaffirm it, he would hold them responsible for damages. Nor does he specifically deny the testimony of Lewis A. May, one of the defendants, to the effect that he told May to "buy it in," and that he would hold him, referring to the firm, responsible for the difference, and that the defendants did, in fact, make such purchase. Neither is it disputed that within two or three days of the time the sale and purchase were made the defendants sent to the plaintiff's attorney a check for $33.15, which was the amount of his deposit, after deducting commissions and the loss sustained between the sale at 104 and the purchase at 107¾. This sum, it seems. to us, was precisely what the plaintiff was entitled to recover, and no more. Having repudiated the sale which he now admits by his complaint he in fact directed them to make, and which he at the time disaffirmed, gave them the right, by reason of his disaffirmance, to repurchase the stock for their own protection, and, if he thereafter sought to take advantage of the sale, he could only do so by making good to them the difference be tween the selling and purchasing price.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur; PATTERSON, J., in result.